IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| PERRY PETROLEUM EQUIPMENT | * | Chapter 11 |
| LTD, INC., | * | |
|     Debtor-in-Possession | * | Case No.: 1:16-BK-02449 MDF |
| | * | |
| PERRY PETROLEUM EQUIPMENT | * | |
| LTD, INC., and BRIAN D. SHEAFFER | * | Adv. No.: 1:16-AP-00169 MDF |
|     Plaintiffs | * | |
| | * | |
|     v. | * | |
| | * | |
| COMMONWEALTH OF PENNSYLVANIA | * | |
| and E.O. HABHEGGER CO., INC. | * | |
|     Defendants | * | |

## OPINION

Brian D. Sheaffer ("Sheaffer"), President of Perry Petroleum Equipment LTD, Inc., ("Debtor") is the subject of a criminal complaint filed in Delaware County for which a trial has been set for January 17, 2017.[1] Debtor filed the within complaint and a motion for preliminary injunction seeking to enjoin the Commonwealth and the complaining party, E.O. Habhegger Co., Inc. ("Habhegger"), from pursuing the charges against Sheaffer. For the reasons set forth below, the motion for a preliminary injunction will be denied.[2]

---

[1] This Court takes judicial notice of the docket of the Court of Common Pleas of Delaware County for criminal case CP-23-CR-0005969-2016. *last accessed on January 10, 2017 at* https://ujsportal.pacourts.us/DocketSheets/CourtSummaryReport.ashx?docketNumber=CP-23-CR-0005969-2016.

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is a non-*Stern* core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052.

## I. Procedural and Factual History

For approximately thirty years before Debtor filed its bankruptcy petition it was in the business of installing gas tanks, gas pumps and performing related service. Debtor and Habhegger had engaged in a business relationship for approximately twenty-five years before Debtor filed its petition.

On February 16, 2016, approximately four months before Debtor filed its petition, Habhegger's attorney, Fox Rothschild LLP, sent a letter to Sheaffer, reiterating an earlier demand that Debtor pay $242,955.89 owed to Habhegger for equipment purchased. In the letter, Habhegger's attorney also stated that Debtor had issued four worthless checks to Habhegger, namely a $5000 check dated March 27, 2015, a $10,000 check dated May 20, 2015, a $1000 check dated October 22, 2015, and a $10,000 check dated November 9, 2015. Having made Debtor aware that the checks had been returned for insufficient funds, the attorney demanded payment within ten days. Habhegger's attorney further stated that if the checks were not made good, the matter would be turned over to local authorities for prosecution and that civil proceedings would be brought to recover the entire unpaid balance. Less than ten days after Fox Rothschild sent the demand letter, Debtor issued two cashiers checks to Habhegger as replacement checks for the March 27 and October 22, 2015 checks.

Debtor filed its petition on June 9, 2016 without submitting replacement checks for the two worthless $10,000 checks. Because Debtor did not upload the complete list of creditors until June 26, 2016, the notice sent to creditors notifying them of the bankruptcy filing and of the meeting of creditors to be held on July 20, 2016 did not include Habhegger. When Debtor filed

his complete list of schedules and statements on July 7, 2016, however, Habhegger was listed as an unsecured creditor in the amount of $236,955.89.

Sheaffer and his wife (the "Sheaffers") filed a Chapter 13 bankruptcy petition on July 8, 2016. Habhegger was included in the list of creditors uploaded to the Court on the same date. When the notice of the Sheaffers' bankruptcy filing and date for the meeting of creditors was served on July 11, 2016, Habhegger was included on the list and the Bankruptcy Noticing Center certified that notice was sent to Habhegger by first class mail on July 13, 2016.

On July 22, 2016, a criminal complaint was filed in Delaware County charging Sheaffer with five counts of violating 18 Pa. C.S. § 4105(a)(1) (bad checks), five counts of violating 18 Pa. C.S. § 4105(a)(2) (bad checks with the drawee in Pennsylvania); five counts of violating 18 Pa C.S. § 3921 (theft by unlawful taking or disposition of moveable property); and five counts of violating 18 Pa. C.S. §3925 (receiving stolen property). The affidavit of probable cause in support of the complaint dated July 26, 2016, stated that Habhegger's president, Kenneth Hagman ("Hagman"), had reported a "check fraud" to Det. Ferdie Ingram ("Det. Ingram") at the Yeadon Police headquarters. The affidavit described the representations made by Hagman to Det. Ingram. These representations included a statement that Habhegger had made parts for a job for Debtor, that Debtor had made a downpayment of $25,000, but that the company did not pay the $60,000 balance due for the job. The affidavit does not describe a time frame in which this transaction is alleged to have occurred. Det. Ingram further reports that Hagman stated that he made multiple attempts to collect the balance from Debtor and eventually received a check dated March 27, 2016 for $5000 that was returned for insufficient funds. According to the affidavit, Hagman stated that four additional checks were returned for insufficient funds. The final check

3

for $60,000 was deposited on February 16, 2016, and there were insufficient funds in the account to honor the check.³

Det. Ingram further stated in the affidavit that he attempted to contact Sheaffer at Debtor's place of business and that a trooper from the Pennsylvania State Police went to the site. Probably unaware that both Debtor and Sheaffer had filed bankruptcy several weeks earlier, Det Ingram concluded in the affidavit that "[a]ll other indicators of the voice mailboxes are all full, and the fence around the [Debtor] company, which appears deserted, clearly shows that Brian Sheaffer has nor [sic] intention of repaying the money owed to [Habhegger]." Det. Ingram further noted that Hagman confirmed that Sheaffer was "the person who sent him bad checks, after receiving his companies [sic] products."

A preliminary hearing was held before the magisterial district judge and was bound over for trial. Sheaffer stated that after the preliminary hearing was concluded, he was informed that if he made restitution of the two $10,000 checks, the prosecution would be terminated.

Trial is set before the Honorable James P. Bradley on January 17, 2017 on two counts each under § 4105(a)(1), § 4501(a)(2), § 3921, and § 3925. A review of the Delaware County docket in this case reveals that the remaining counts relate to the two $10,000 checks, one dated May 15, 2015 and the other dated November 20, 2015 for which Hahbegger has never received good funds.

---

³Fox Rothchild's February 2016 letter to Debtor states that four bad checks were received by Habhegger, not five as Hagman reported to Det. Ingram. At the hearing before this Court, Sheaffer stated that the Commonwealth was no longer pursuing charges in regard to the $60,000 check because it was presented for payment more than thirty days after it was issued.

After the criminal complaint was bound over for trial, Debtor filed the within adversary proceeding on December 1, 2016 seeking to enjoin the criminal proceeding in state court. A summons was issued on December 2, 2016 and served on the Commonwealth and on Habhegger setting an answer date of January 1, 2017. Neither Habhegger nor the Commonwealth filed an answer to the complaint. On December 16, 2017, Debtor filed a motion for preliminary injunction requesting me to enjoin further criminal proceedings in state court. At a hearing held on January 4, 2017 on Debtor's motion for a preliminary injunction neither Habhegger nor the Commonwealth appeared.

## II. Discussion

Before analyzing whether Debtor has met its burden for injunctive relief, I must decide whether I can permanently enjoin a state court criminal action commenced at the behest of a creditor to collect a debt to be addressed in Debtor's Chapter 11 proceeding.

As a general matter, the automatic stay that arises under 11 U.S.C. § 362(a) when a bankruptcy petition is filed does not apply to the commencement or continuation of a criminal action or proceeding against the debtor. 11 U.S.C. § 362(b)(1). Section 362(b)(1) is "a clear and straightforward declaration" excepting criminal prosecution from the protection of the automatic stay. *Pickett v. Quinn (In re Pickett)*, 321 B.R. 663, 668 (Bankr. D. Vt. 2005).

There are strong policy considerations restraining a federal court from enjoining state court criminal proceedings. A federal court is permitted to enjoin a state criminal prosecution only if the moving party does not have an adequate remedy at law, will suffer an irreparable injury that is great and immediate, and the potential injury relates to "federally protected rights . . . [and] cannot be eliminated by his defense against a single criminal prosecution." *Younger v.*

5

*Harris*, 401 U.S. 37, 43-46 (1971); *see also Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178 (3d Cir. 1982) (citing *Younger*).

In *Davis*, the Third Circuit stated that the possibility that a bankruptcy debtor will be convicted and required to pay restitution "in contravention of the bankruptcy court's discharge order and the Bankruptcy Code policy of providing debtors with a fresh start" provides an insufficient basis for imposing injunctive relief. *Davis,* 691 F.2d at 178*; Ticket Plus, Inc. v. Makoul,* 103 B.R. 574*,* 577 (Bankr. M.D. Pa. 1989); *Ropietski v. Lackawanna Cnty. District Attorney*, 101 B.R. 437, 440 (Bankr. M.D. Pa. 1989). In *Davis* the Third Circuit declined to reach the issue of whether a restitution order would violate the Supremacy Clause of the United States Constitution because the debtor had not demonstrated that he would be unable to raise the issue in state court. Invoking principles of comity, the Third Circuit observed, "[f]ederalism in this nation relies in large part on the proper functioning of two separate court systems. The integrity of each must be preserved so that both can serve as effective forums for protecting individual rights and societal interests." *Davis*, 691 F2d at 179. State criminal prosecution may vindicate a variety of state interests. In this case, the state has an interest in protecting the integrity of commercial transaction that is independent of Habhagger's interest in being paid.

Sheaffer argues that he will be irreparably harmed if he is required to defend himself in state court, which will draw his attention away from his personal and corporate cases. Further, if he is incarcerated, he will be unable to participate in the administration of his Chapter 13 case and Debtor's Chapter 11 case. These types of potential harms, however, do not support injunctive relief. Irreparable injury does not arise from the "'cost, anxiety, and inconvenience' of defending

6

oneself in a good faith criminal prosecution.'" *Davis*, 691 F.2d at 178 (quoting *Younger*, 405 U.S. at 46).

When Congress drafted the automatic stay exemption of § 362(b)(1), it intended to permit authorities to both continue the prosecution of criminal actions and to commence such actions. The legislative history explains that "the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed . . . The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 342 (1977) and S. Rep. No 95-989, 95th Cong., 2d Sess. 51 (1978), U.S. Code Cong & Admin,. News 1978, pp. 5787, 5837, 6298-99.

The Third Circuit has provided guidance on the circumstances that merit imposing an injunction to stop the commencement or continuation of criminal proceedings. A federal court is permitted to intervene only when the criminal complaint is "brought in bad faith or for purposes of harassment." *Davis,* 691 F.2d at 178. Debtor argues that this is exactly what occurred in this case. Hagman went to the local police to report the bad checks on July 22, 2016, nine days after Habhegger was served with notice of Sheaffer's bankruptcy filing. He informed the authorities that Debtor had issued five bad checks when he knew or should have known that only two checks remained unpaid. Further, because the notice issued to Habhegger informing it of Sheaffer's bankruptcy filing was not returned to the Clerk as undeliverable, I conclude that Hagman knew Sheaffer had filed for bankruptcy, but did not inform the authorities. Accordingly, I find that Habhegger proceeded in bad faith by misrepresenting the number of bad checks outstanding and by failing to inform the Yeadon authorities of Sheaffer's bankruptcy filing.

7

When the criminal complaint is filed by the state, however, the motives of the complaining party are not considered when evaluating the good faith of the prosecutor. As emphasized in *Davis*, principles of comity dictate that I presume that the Commonwealth is prosecuting the criminal actions on behalf of the public to protect the integrity of commercial transactions and is not serving as the handmaiden of the complaining witness. *Id.* at 179. To obtain injunctive relief, it was incumbent upon Debtor to prove that the District Attorney had good reason "to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or that the complaining witnesses had insufficient evidence to support their allegations." *Id.*[4]

In Debtor's view,[5] Habhegger enlisted the District Attorney to collect its debt aware that Debtor had filed for bankruptcy, and it now seeks to obtain a preferential payment of its debt through a state criminal prosecution. Debtor makes a compelling argument that Habhegger proceeded in bad faith. But while Debtor was able to prove that Habhegger pursued the criminal action with the intent to obtain payment of the outstanding bad checks, I cannot impute the same motive to the Commonwealth.

---

[4] Cases subsequent to *Davis* have provided additional guidance on when injunctive relief is warranted. The District Court for the Middle District of Pennsylvania has held that a series of unsuccessful prosecutions are required to demonstrate harassment and bad faith before injunctive relief may be granted. *Spanier v. Kane*, 34 F. Supp 3d 524, 528 (M.D. Pa. 2014) (observing that "absent a threshold showing of bad faith, harassment, or other unusual circumstances, a single criminal prosecution alone—even under an unconstitutional statute—will not warrant federal court intervention, nor will an allegation of irreparable harm based on a single prosecution").

[5] Because neither Habhegger or the Commonwealth filed an answer or appeared at the preliminary injunction hearing, Debtor's view was the only one presented to the Court.

The original complaint alleged that Sheaffer had passed five bad checks. When Sheaffer presented evidence that three of the checks did not meet the statutory requirements of 18 Pa. C.S. § 4105, the Commonwealth dropped three counts. Debtor asserts that the Commonwealth offered to drop the charges if Debtor paid Habhegger $20,000, the total of the two worthless checks. The offer to drop the remaining charges in exchange for restitution does not support a finding that the proceeding was brought solely to collect a debt. *In re McMullen,* 189 B.R. 402 412 (Bankr. E.D. Mich 1995) (observing that a prosecutor represents the interests of the general public and is charged with making an independent determination of whether prosecution is warranted)*;Richardello v. Garrick (In re Richardello)*, 28 B.R. 344, 347 (Bankr. D. Mass. 1983) ("the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution"). Accordingly, Debtor has failed to show that the Commonwealth is pursuing the criminal action against Sheaffer in bad faith or for purposes of harassment. Further I find that Sheaffer, the subject of the prosecution, has an adequate remedy at law. At the preliminary injunction hearing, Sheaffer offered a variety of defenses to the prosecution, which he will be permitted to advance in the criminal proceedings.

### III. Conclusion

For the reasons set forth above, Debtor's motion for a preliminary injunction enjoining the criminal prosecution of Debtor's principal, Brian Sheaffer is denied. Debtor has requested that if an injunction against the Commonwealth is denied, that Habhegger, having acted in bad faith, be enjoined from participating in the prosecution against Sheaffer. I decline to issue an injunction enjoining Habhegger's participation in the criminal case as it would constitute

impermissible interference with the Commonwealth's prosecution of the case. An appropriate order will be entered.

By the Court,

Date: January 12, 2017

_Mary D France_
Bankruptcy Judge